Commonwealth *v.* Daniel.

## Commonwealth *vs.* Clint Daniel
### (and a companion case[1]).

Suffolk. December 6, 2012. - April 5, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Controlled Substances. Firearms. Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Search and Seizure,* Threshold police inquiry, Motor vehicle, Probable cause, Protective sweep. *Evidence,* Firearm. *Motor Vehicle,* Firearms, Operating under the influence.

A Boston Municipal Court judge did not err in allowing the criminal defendants' pretrial motions to suppress evidence of firearms obtained following the stop of their vehicle, where, absent articulable facts supporting a belief on the part of the police officer who stopped the vehicle that either occupant possessed a criminal amount of marijuana, the search of the vehicle was not justified by a need to search for contraband following one defendant's surrender of a noncriminal amount of marijuana [750-752]; and where the officer's actions in allowing the occupants to move the vehicle without first removing a knife from the dashboard suggested that the defendants' movements and actions, viewed by a trained officer on the scene, did not create a heightened awareness of danger that would justify the officer's exit order and search of the vehicle in order to ensure his safety [752-754].

This court, in reviewing the allowance by a Boston Municipal Court judge of the criminal defendants' pretrial motion to suppress evidence of firearms obtained following the stop of their vehicle, declined to consider claims, advanced by the Commonwealth for the first time on appeal, that a police officer's search of the vehicle was proper because, after smelling the odor of burnt marijuana and recovering a noncriminal amount of it from one defendant, the officer had probable cause to believe that the driver was operating while under the influence of marijuana [754-757] or that the officer was "duty-bound" to conduct the search to ensure that the occupants would not smoke marijuana while driving [757].

Complaints received and sworn to in the Central Division of the Boston Municipal Court Department on December 18, 2009.

Pretrial motions to suppress evidence were heard by *Tracy-Lee Lyons,* J.

[1]Commonwealth *vs.* Alyson Tayetto.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Timothy J. Brown*, Committee for Public Counsel Services, for the defendant.

*Zachary M. Hillman*, Assistant District Attorney (*Benjamin R. Megrian*, Assistant District Attorney, with him) for the Commonwealth.

DUFFLY, J. The defendants, Clint Daniel and Alyson Tayetto, were stopped by a Boston police officer for a motor vehicle infraction in the early morning hours of December 13, 2009. The interior of the vehicle smelled of burnt marijuana, and in response to a question from the officer, Tayetto, the driver, produced two small bags containing the substance. The officer searched the vehicle and found a handgun and ammunition in the glove box. Daniel and Tayetto were subsequently charged with several firearms offenses.

The defendants moved to suppress the evidence recovered from the vehicle. A Boston Municipal Court judge allowed the motions, and a single justice of this court allowed the Commonwealth's motion for leave to file an interlocutory appeal in the Appeals Court, pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). The Appeals Court reversed the Boston Municipal Court judge's order that the evidence be suppressed, *Commonwealth* v. *Daniel*, 81 Mass. App. Ct. 306, 313-316 (2012), and we granted Daniel's application for further appellate review.

The Commonwealth argues that the motions to suppress should not have been allowed. The Commonwealth contends that the officer had probable cause to search the vehicle for contraband, and thus permissibly ordered both occupants from the vehicle, and that the circumstances would have caused a reasonable officer to fear for his safety, thus permitting him to search the vehicle for weapons. In addition, the Commonwealth makes two claims not raised before the motion judge or in its brief before the Appeals Court: that the officer had probable cause to believe that Tayetto was operating a vehicle while under the influence of marijuana, in violation of G. L. c. 90, § 24 (*a*), and therefore it was permissible to search the vehicle for evidence of that crime; and that the search was permissible because the

officer had a responsibility to ensure that Tayetto did not consume any marijuana while operating a vehicle on the streets of the Commonwealth. We affirm the order allowing the motions to suppress.

*Background.* Daniel and Tayetto were each charged with carrying a firearm without a license, G. L. c. 269, § 10 (*a*); receiving a firearm with a defaced serial number, G. L. c. 269, § 11C; unlawful possession of ammunition, G. L. c. 269, § 10 (*h*); two counts of unlawful possession of a large capacity feeding device, G. L. c. 269, § 10 (*m*); and unlawful possession of a loaded firearm, G. L. c. 269, § 10 (*n*). Tayetto was also charged with three civil motor vehicle infractions.

The Boston police officer who stopped the vehicle was the only witness at the hearing on the motions to suppress. The prosecutor questioned the officer about the circumstances under which he had stopped the vehicle, issued exit orders to the occupants, and searched the glove box. In a memorandum in opposition to the motions to suppress filed after the hearing, the prosecutor argued that, because of the presence of marijuana in the vehicle, the officer's search was permissible under the automobile exception to the warrant requirement, and was further justified by the need to ensure officer safety. At no time did the prosecutor suggest that the search was justified because Tayetto was driving while under the influence of marijuana, and she was not charged with that offense. Nor did the prosecutor elicit testimony at the hearing which would have supported such a claim.

After the motions to suppress were allowed, the prosecutor filed a motion requesting that the judge supplement her findings to credit the officer's testimony in its entirety, and that she provide more detail concerning the order in which the officer performed the search and the procedure he used. The prosecutor also filed a motion for reconsideration that raised no new issues. The motion judge issued limited supplemental findings, among them that "[t]he court believes the officer searched the car based on a hunch not substantiated by reasonable suspicion and/or articulable facts," and denied the motion for reconsideration.

*Discussion.* 1. *Findings of fact.* In reviewing a ruling on a motion to suppress, "we accept the judge's subsidiary findings

of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " *Commonwealth v. Scott,* 440 Mass. 642, 646 (2004), quoting *Commonwealth v. Jimenez,* 438 Mass. 213, 218 (2002). The judge stated that her findings were based on the "credible testimony" of the officer who made the stop. The judge stated explicitly, however, that she did not find credible the officer's testimony that he had a heightened awareness of danger during the stop. It is therefore not implicit in the judge's findings that she found the entirety of the officer's testimony credible. See *Commonwealth v. Isaiah I.,* 448 Mass. 334, 337 (2007), *S.C.,* 450 Mass. 818 (2008) ("Appellate courts may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony"). Rather, it is apparent that the judge credited only those portions of the testimony that were reflected in her findings and were relevant to the specific issues before her.

We summarize the judge's findings. At approximately 3:40 A.M., the officer was patrolling the Dorchester section of Boston in a marked cruiser. He noticed a Toyota sport utility vehicle (SUV) traveling toward him with a nonfunctioning driver's side headlight. The SUV "then made an abrupt left hand turn in front of his cruiser without using the directional signal." The officer turned right and followed the vehicle. He activated his blue emergency lights, and the driver of the SUV "applied the brakes and made an abrupt stop in the middle of the left travel lane."

The officer approached the passenger side of the vehicle and saw that Daniel, who was sitting in the passenger seat, had his head down and his shoulders were "rocking back and forth." Daniel sat upright when the officer reached the window. The officer could smell the odor of freshly burnt marijuana. He asked the occupants if they "knew anything about" the smell, and they replied that they had been to a party where people were smoking. Upon the officer's request, Tayetto produced her driver's license. The officer then asked both occupants whether they had any marijuana in the vehicle. Tayetto "produced two small bags from her clothes." The officer asked if there was more in the vehicle. The defendant removed a passport, keys,

and a folding knife from his pockets and placed them on the dashboard, saying, "this is all I got." The judge found that "this behavior was significant to [the officer] because it was not common for someone to empty their pockets and that when they do it is because they are trying to conceal something." By that point, vehicles were stopped behind them on the road. The officer instructed Tayetto to move her vehicle to the side of the road, and she did so; he did not remove the marijuana or the knife from the vehicle, or order the defendant to get out of the vehicle.

The officer also moved his cruiser to the side of the road, and then returned to the SUV and ordered Daniel out of his seat. He searched the defendant for drugs and weapons "based on the smell of marijuana and his movements." The search did not yield any contraband, and the officer instructed Daniel to sit on the bumper of the cruiser. He then ordered Tayetto out of the vehicle, and searched her, after which he instructed her to sit on the steps of a nearby house. The officer briefly returned to his cruiser, then searched the glove box of the SUV, where he discovered a firearm. At that point, he called for backup.

2. *Whether the search was permissible.* These events followed the passage of St. 2008, c. 387, "An Act establishing a sensible State marihuana policy" (2008 initiative), which made possession of one ounce or less of marijuana a civil infraction, rather than a criminal one. See G. L. c. 94C, §§ 32L-32N. See also *Commonwealth* v. *Cruz,* 459 Mass. 459, 460 (2011) (*Cruz*). We held in *Cruz, supra* at 476, that, following the passage of the 2008 initiative, the smell of burnt marijuana alone does not provide probable cause to believe that there is evidence of a specific crime or a criminal amount of contraband — i.e., more than one ounce of marijuana — in a vehicle.

When police conduct a search of an automobile without first obtaining a search warrant, the Commonwealth bears the "burden of proving the existence of both probable cause to believe that the automobile contained contraband and of exigent circumstances to justify proceeding without a warrant." *Commonwealth* v. *Santiago,* 410 Mass. 737, 744 (1991). Under the "automobile exception" to the warrant requirement, the Commonwealth may satisfy its burden by proving that officers had probable cause to

believe that there was contraband in the vehicle. *Commonwealth* v. *Motta,* 424 Mass. 117, 122 (1997). The determination of probable cause is objective, and focuses on "whether the facts would warrant a 'reasonable' person in believing the action taken to be appropriate." *Commonwealth* v. *Hason,* 387 Mass. 169, 175 (1982).

a. *Probable cause to search for additional contraband.* The Commonwealth contends that the officer had probable cause to search the vehicle for more marijuana based on Tayetto's production of two small bags from her pockets. Prior to the passage of the 2008 initiative, that would have been the case. See *Commonwealth* v. *Garden,* 451 Mass. 43, 48 (2008) (odor of marijuana "alone can supply probable cause to believe that marijuana is nearby," and therefore probable cause to search for contraband). However, the statutory decriminalization of possession of small amounts of marijuana has affected aspects of related criminal laws and, consequently, the law of search and seizure. See *Cruz, supra* at 475-477.

In *Cruz, supra,* the Commonwealth argued that if police have probable cause to believe that any amount of marijuana exists in a motor vehicle, even an amount not subject to criminal penalty, police may conduct a warrantless search based on their authority to search for "contraband or evidence of a crime." See *id.* at 473-474, quoting *Commonwealth* v. *Cast,* 407 Mass. 891, 901 (1990). We disagreed, concluding that, where no facts are articulated to support probable cause to believe that a criminal amount of contraband may be found in a vehicle, a neutral magistrate would not issue a search warrant, and therefore a warrantless search is not justified based solely on the smell of marijuana. *Cruz, supra* at 475-476. As we said, "It is unreasonable for the police to spend time conducting warrantless searches for contraband when no specific facts suggest criminality." *Id.* at 477. See *Commonwealth* v. *Keefner,* 461 Mass. 507, 517-518 (2012) (observation that defendant had used marijuana, without any indication of his intent to distribute, did not justify warrantless search of his person).

Here, Tayetto surrendered two small bags of marijuana at the request of the officer. Possession of the amount contained therein constituted a civil infraction, not a criminal offense. "As citizens,

we expect that if we commit a civil infraction we will pay a fine; we do not expect a significant intrusion into our privacy and liberty." *Cruz, supra* at 469 n.16. Absent articulable facts supporting a belief that either occupant of the vehicle possessed a criminal amount of marijuana, the search was not justified by the need to search for contraband.

b. *Officer safety.* The Commonwealth further argues that the officer could permissibly remove both occupants and search the interior of the vehicle in order to ensure his safety. An officer who does not have probable cause to search an automobile for evidence of a crime or contraband may nonetheless conduct a limited search for weapons if "a reasonably prudent man in [his] position would be warranted in the belief that the safety of the police of that of other persons was in danger." *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). "[T]he search must be confined to the area from which the suspect might gain possession of a weapon," either because he is still within the vehicle or because he is likely to return to the vehicle at the conclusion of the officer's inquiry. *Commonwealth* v. *Almeida,* 373 Mass. 266, 272 (1977). While "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns," *Commonwealth* v. *Gonsalves,* 429 Mass. 658, 664 (1999), the intrusiveness of the officer's conduct must be "proportional to the degree of suspicion that prompted it." *Commonwealth* v. *Torres,* 433 Mass. 669, 672 (2001). See *Commonwealth* v. *Silva, supra* at 408 ("The search is thus confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered").

Here, the officer ordered both occupants from the vehicle and searched their persons. Upon finding nothing, he then searched the interior of the vehicle, including the glove box. The Commonwealth argues that a number of factors, in combination, would have justified an officer in the circumstance in conducting a limited search of the vehicle: the late hour; that the officer was outnumbered by the vehicle's occupants; Daniel's hunched shoulders and movement as the officer approached the vehicle; Daniel's emptying his pockets when not specifically requested to do so; and the presence of a noncriminal amount of marijuana.

However, as the judge found, the officer's actions in allowing

the occupants to move the vehicle without first removing the knife from the dashboard suggest that the defendants' movements and actions, viewed by a trained officer on the scene, did not create a "heightened awareness of danger."[2] The officer was not familiar with the occupants before he stopped the vehicle, and described both as compliant. Tayetto produced identification upon request. Although we are mindful that officers must have latitude to ensure their safety, see *Commonwealth* v. *Silva, supra* at 407, here the search far exceeded what was necessary.

The Commonwealth cites a number of cases in which an officer acted properly to ensure his safety, either by issuing exit orders or by searching the interior of a vehicle in response to suspicious movements by its occupants. In none of those cases, however, were there so few facts to support a heightened sense of danger. See, e.g., *Commonwealth* v. *Torres, supra* at 674 (observation of passengers bent over, suggesting they were concealing or retrieving weapon, justified heightened sense of danger when considered with fact that, when vehicle stopped, all doors "flew open" and one occupant immediately fled scene with backpack); *Commonwealth* v. *Graham,* 78 Mass. App. Ct. 127, 128-130 (2010) (passenger reached in between console and seat during stop; driver locked glove box after retrieving registration; police knew at time that at least one occupant of vehicle had history of firearms violations; and officer noticed vehicle because people on sidewalk "shr[a]nk back" when it passed). See also *Commonwealth* v. *Silva, supra* at 408-409 (question was "close" whether limited search of vehicle for weapons was permitted where passenger leaned down as if to place something under seat, and officer knew passenger previously had been arrested in company of individual carrying illegal weapon). Here, by contrast, where the officer had little, if any, information to

---

[2] The judge found that the officer had allowed Tayetto to move her vehicle from the middle of the road without removing Daniel's folding knife from the dashboard or Daniel from the vehicle, and left them while he moved his own cruiser. He did not call for backup until he discovered the firearm. It is not necessary to show that an individual police officer personally experienced fear, "so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe he was in danger," *Commonwealth* v. *Va Meng Joe,* 425 Mass. 99, 102 n.7 (1997), but an officer's actions may suggest whether a suspect's movements appeared threatening to a trained eye.

suggest that the occupants of the vehicle were armed or dangerous, his extensive search was not "proportional to the degree of suspicion that prompted it." See *Commonwealth* v. *Torres*, *supra* at 672.

c. *Operating while under the influence.* The Commonwealth argues for the first time on appeal that the officer's search of the vehicle was proper because he had probable cause to believe that the driver was operating while under the influence of marijuana, in violation of G. L. c. 90, § 24 (*a*). If such probable cause existed, the officer properly could have removed the defendants from the vehicle and searched it for evidence pertaining to that crime. See *Commonwealth* v. *Johnson*, 461 Mass. 44, 49 (2011), quoting *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 55 (1974) (search justified even though defendant was not arrested for operating while under influence; "[t]he issue of paramount importance is whether the police, prior to the commencement of a warrantless search, had probable cause to believe that they would find 'the instrumentality of a crime or evidence pertaining to a crime' in the vehicle"). The 2008 initiative, while decriminalizing possession of small quantities of marijuana, explicitly did not alter Massachusetts laws relating to operating while under the influence.[3] See G. L. c. 94C, § 32L.

The Commonwealth did not raise this argument in its opposition to the motions to suppress, or in its motion for reconsideration, nor were any questions at the evidentiary hearing specifically focused on that issue.[4] Nonetheless, the Commonwealth asks that we extend our longstanding doctrine that "[a]n appel-

---

[3]The statute specifies that "[n]othing contained herein shall be construed to repeal or modify existing laws, ordinances or bylaws, regulations, personnel practices or policies concerning the operation of motor vehicles or other actions taken while under the influence of marihuana . . . , possession of more than one ounce of marihuana . . . , or selling, manufacturing or trafficking in marihuana . . . ." G. L. c. 94C, § 32L. See *Commonwealth* v. *Keefner*, 461 Mass. 507, 510 (2012).

[4]Daniel's memorandum in support of his motion to suppress, filed following the first day of the hearing on the motion, addressed briefly whether the officer had reasonable suspicion that Tayetto was operating while under the influence, which would have been sufficient only to justify removing the driver, and not the defendant, a passenger, from the vehicle in order to conduct field sobriety tests. The Commonwealth's opposition did not address impairment or driving while under the influence. The only testimony elicited from the officer concerning Tayetto's appearance, comportment, or reactions was

late court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). The Commonwealth argues that we may reverse the judge's decision on a ground not advanced before the judge, on which the judge made no specific findings, and about which the defense had no opportunity to cross-examine the sole fact witness.

In certain situations we may address claims raised for the first time on appeal, when such issues are fully briefed and of particular public importance, see, e.g., *Costa* v. *Brait Bldrs. Corp.*, 463 Mass. 65, 70 (2012); however, we are particularly reluctant to do so where there are no factual findings directed to the theory now advanced.[5] See *Commonwealth* v. *Bettencourt*, 447 Mass. 631, 633-634 (2006) ("we need not consider an argument that urges reversal of a trial court's ruling when that argument is raised for the first time on appeal. . . . Trial judges cannot be expected to rule, and indeed should not, on theories not presented to them, and defendants cannot respond to arguments not made at the trial level"). See also *Commonwealth* v. *Silva*, 440 Mass. 772, 781 (2004) ("When a defendant attempts to raise a new issue after the completion of the hearing's evidentiary phase, the evidence on that issue is likely to be 'scant' or nonexistent").

Even were we to consider the entirety of the officer's testimony,

when the officer identified her in the court room and when he agreed, on cross-examination, that the demeanor of both defendants had been "compliant." Further, the Commonwealth's brief before the Appeals Court did not suggest that the search was justified by suspicion that Tayetto was operating while under the influence; that theory was suggested sua sponte by a justice of the Appeals Court during oral argument.

[5] The Appeals Court's decision relied on testimony not discussed in the judge's findings, and on extrapolations from those findings. The court held that, "[w]hile it might have been preferable for [the officer] first to have made detailed observations of Tayetto's eyes or conducted field tests for additional evidence that she was operating while under the influence of marijuana, his failure to do so is not fatal to the determination of probable cause." *Commonwealth* v. *Daniel*, 81 Mass. App. Ct. 306, 313 (2012). We disagree. Whether we characterize Tayetto's unsignaled turn and what the judge described as an "abrupt" stop as "erratic" or dangerous driving, without findings as to the driver's appearance and reactions, poor driving alone in these circumstances will not provide probable cause to believe a driver is operating while under the influence of alcohol or drugs.

and not only those of his statements specifically credited by the motion judge, that testimony would not "warrant a prudent person in believing" that Tayetto was operating while under the influence of marijuana. See *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). A person violates G. L. c. 90, § 24 (1) (*a*) (1), when she "operates a motor vehicle . . . while under the influence of intoxicating liquor, or of marijuana, narcotic drugs, depressants or stimulant substances." A driver may be found to have been "under the influence" when her consumption of such substances "diminished [her] ability to operate a motor vehicle safely." *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985). Although the Commonwealth "need not prove that the defendant actually drove in an unsafe or erratic manner . . . it must prove a diminished capacity to operate safely." *Id.* We read the statute "in light of the legislative purpose to protect the public from drivers whose judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies are diminished because of the consumption of alcohol" or drugs. *Id.* at 172-173. See *Commonwealth* v. *Brooks*, 366 Mass. 423, 427 (1974).

"Erratic" driving that violates the civil motor vehicle code may give rise to a reasonable suspicion that a driver is impaired, permitting an investigatory stop. *Commonwealth* v. *Smigliano*, 427 Mass. 490, 493 (1998). However, after the officer in this case made the stop, he did not observe anything about the driver that would lead a reasonable observer to believe that her capacity to operate a vehicle was impaired by the use of marijuana.

Here, the officer smelled the odor of burnt marijuana and recovered two small bags of it from Tayetto, who explained that the smell was the result of others using marijuana at a party. While the officer was not required to credit this explanation, the Commonwealth elicited no testimony that Tayetto showed any signs of impairment during their encounter. The officer did not testify that Tayetto's eyes were red or glassy, that her speech or movements were unusual, or that her responses to questioning were inappropriate or uncooperative.[6] He did not perform any

---

[6]Manifestations of impairment may differ between subjects who are under

tests to assess her physical and mental acuity. Indeed, he instructed her to move her vehicle herself to allow traffic to pass. In short, there was no indication that her "judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies [were] diminished" by the consumption of marijuana. *Commonwealth* v. *Connolly, supra* at 172-173.

d. *Duty to ensure public safety.* The Commonwealth argues that, notwithstanding the officer's lack of probable cause to search the vehicle, he was "duty-bound" to conduct the search to ensure that the occupants would not smoke marijuana while driving. This argument is based largely on the assumption, unsupported in the findings, that Tayetto had ingested marijuana before driving or while driving prior to the police stop. See *Commonwealth* v. *Bettencourt, supra* (declining to consider "community caretaker" rationale for search when raised for first time on appeal). We decline to consider this rationale, which was not argued below and not supported by the findings of the motion judge.

*Order allowing motions to suppress affirmed.*

---

the influence of liquor and those who are under the influence of marijuana, depressants, or stimulant substances. Compare *Commonwealth* v. *Reynolds*, 67 Mass. App. Ct. 215, 219 (2006) (following motor vehicle accident in which driver hit and killed child on bicycle, during which vehicle flipped over but driver was uninjured, driver taking depressant drugs was unusually "subdued" given circumstances); *Commonwealth* v. *Butterfield*, 44 Mass. App. Ct. 926, 926 (1998) (driver who ingested alcohol had red eyes, slurred speech, and lack of balance, and exhibited belligerent behavior). Cf. *Commonwealth* v. *Smola*, 69 Mass. App. Ct. 1113 (2007) (driver under influence of marijuana had "crab"-like sideways walk; red, bloodshot eyes; and dazed look).