NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-450                                          Appeals Court

COMMONWEALTH  vs.  HARUTYUN DEMIRTSHYAN.


No. 14-P-450.

Essex.     February 6, 2015. - August 5, 2015.

Present:  Cypher, Hanlon, & Agnes, JJ.


Practice, Criminal, Motion to suppress, Appeal by Commonwealth, Interlocutory appeal.  Rules of Appellate Procedure. Supreme Judicial Court, Superintendence of inferior courts. Appeals Court, Jurisdiction.  Constitutional Law, Search and seizure, Probable cause, Reasonable suspicion.  Search and Seizure, Automobile, Protective frisk, Reasonable suspicion, Probable cause.  Probable Cause.



Complaint received and sworn to in the Lynn Division of the District Court Department on June 7, 2013.

A pretrial motion to suppress evidence was heard by Albert S. Conlon, J.; a motion to dismiss was heard by him; and a motion for reconsideration was heard by Ellen Flatley, J.

An application for leave to prosecute an interlocutory appeal was allowed by Fernande R.V. Duffly, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.


Ronald DeRosa, Assistant District Attorney, for the Commonwealth.
Jane Larmon White for the defendant.

AGNES, J.  This appeal arises out of the Commonwealth's application for an interlocutory appeal of a District Court order suppressing evidence consisting of an electroshock weapon,[1] the defendant's statements regarding its ownership, and the arresting officer's observations that led to its discovery during a routine motor vehicle stop.  The defendant claims that the Commonwealth's appeal is untimely.  The Commonwealth contends that its appeal is not time barred because the issue was addressed and decided in its favor in the court below, and, moreover, its application for leave to appeal was authorized by a single justice of the Supreme Judicial Court.  Based on the guidance in Commonwealth v. Jordan, 469 Mass. 134 (2014), decided after this case was entered in the Appeals Court, we determine that the merits should be reached albeit for reasons different from those advanced by the Commonwealth.

On the merits, the Commonwealth contends that the police officer was justified in ordering the defendant to exit the vehicle (leading to the discovery of the weapon) when at the conclusion of the stop, the defendant suddenly lunged and

---

[1] An electroshock weapon is defined as "a portable device or weapon from which an electrical current, impulse, wave or beam may be directed, which current, impulse, wave or beam is designed to incapacitate temporarily, injure or kill."  G. L. c. 140, § 131J, as appearing in St. 2004, c. 270, § 1.  Unlawful possession of such a device is punishable by a fine, imprisonment in the house of correction, or both.

reached into the back seat of the vehicle.  We agree, and, accordingly, reverse the order allowing the motion to suppress.

Discussion.  1.  Procedural history.  The evidentiary hearing on the defendant's motion to suppress took place on September 17, 2013, and included the testimony of one police officer.  The transcript, which is part of the record on appeal, consists of thirty-eight pages.  The judge endorsed his findings and rulings on the motion that day.  The parties were notified in court on October 1, 2013, that the motion was allowed.  The Commonwealth requested a thirty day continuance.  The Commonwealth filed a timely notice of appeal on October 7, 2013. See Mass.R.Crim.P. 15(b)(1), as appearing in 422 Mass. 1501 (1996).  Several days later, the judge allowed the Commonwealth's motion to file its rule 15(a)(2) application for leave to file an interlocutory appeal on or before November 5, 2013.  At a status conference on November 5, 2013, the Commonwealth reported that the transcript was not prepared and it requested additional time to "get all the paper work together."[2]  The judge continued the matter for "status" to February 4, 2014.  At a hearing held on February 4, defense

---

[2] The record before us does not include a transcript of the hearing on November 5, 2013.  However, it appears that the judge who allowed the Commonwealth's motion to reconsider the order dismissing its interlocutory appeal had access to it or to a recording of the hearing.  We rely on her account of what occurred at that event.

counsel informed the judge that the Commonwealth had not filed its application for leave to file an interlocutory appeal. The Commonwealth asked for a continuance to February 7, 2014. Defense counsel moved to dismiss. The judge, who was the same judge who had heard and decided the defendant's motion to suppress and who had continued the case to November 5 and then to February 4, allowed the motion to dismiss.

The Commonwealth responded on February 19, 2014, by filing a motion to reconsider the order of dismissal.[3] In a written memorandum of decision and order dated March 10, 2014, the motion for reconsideration was allowed.[4] The judge stated that she viewed the issue as simply whether, on February 4, 2013, the Commonwealth should have been given the three additional days it requested to file its application for an interlocutory appeal. The judge reasoned that because the Commonwealth had done "substantial work" on the case as of February 4 and the District Attorney's office was burdened by an "extraordinary" amount of appellate-related work, as outlined in an affidavit submitted by

---

[3] Although the motion for rehearing was scheduled to be heard by the same judge who had ordered the application dismissed, it was referred to a different judge -- we assume for appropriate reasons. A hearing on the Commonwealth's motion for reconsideration took place on February 25, 2014.

[4] The record before us indicates that on March 10, 2014, the Commonwealth filed its application for leave to file an appeal with a single justice of the Supreme Judicial Court. On March 18, 2014, the single justice allowed the application.

the chief of the office's appellate division, the motion to reconsider should be allowed "in the exercise of discretion."

Thereafter, on March 10, 2014, the Commonwealth filed its application for leave to appeal in the Supreme Judicial Court for Suffolk County. An opposition was filed by the defendant on March 14, 2014. The single justice entered an order on March 18, 2014, allowing the Commonwealth's application.[5]

2. Legal framework. When either the Commonwealth or the defendant seek interlocutory review of a judge's decision allowing or denying a pretrial motion to suppress pursuant to G. L. c. 278, § 28E, and Mass.R.Crim.P. 15(a)(2) and (b)(1),[6] the appealing party is required to file two documents: a notice of appeal in the trial court and an application for leave to appeal in the Supreme Judicial Court for Suffolk County. Jordan, 469 Mass. at 140. Rule 15(b)(1) requires that both documents be

---

[5] Although the order entered by the single justice does not address the timeliness issues that are the subject of this appeal, the procedural history of the case, including the enlargements of time obtained by the Commonwealth and the allowance of its motion for reconsideration, were set forth in the defendant's opposition filed on March 14, 2014.

[6] Rule 15(b)(1) provides in relevant part: "An application for leave to appeal under subdivision (a)(2) shall be made by filing within ten days of the issuance of notice of the order being appealed, or such additional time as either the trial judge or the single justice of the Supreme Judicial Court shall order, (a) a notice of appeal in the trial court, and (b) an application to the single justice of the Supreme Judicial Court for leave to appeal."

filed within ten days of the issuance of notice of the order being appealed. Jordan, 469 Mass. at 140.[7] In the present case, unlike in Jordan, the defendant does not question the timeliness of the Commonwealth's filing of the notice of appeal on October 7, 2013. Instead, the defendant challenges whether the application seeking leave from the single justice to pursue the appeal was filed in a timely manner. Nonetheless, Jordan is instructive in our consideration of this issue because its explanation of the interplay between the statutes and rules governing interlocutory appeals from a ruling on a motion to suppress applies both to the filing of the notice of appeal and the application for leave to appeal.

Jordan instructs that in cases involving "excusable neglect," Mass.R.App.P. 4(c), as amended, 378 Mass. 928 (1979), trial judges have authority to enlarge the time in which to file the notice of appeal (and by analogy, the application for leave to file an interlocutory appeal) for an additional thirty days. Jordan, 469 Mass. at 141-142. As a result, a trial judge may extend the time for filing the notice of appeal in the trial court and the application for leave to appeal in the Supreme

---

[7] Jordan clarifies that interlocutory appeals from a trial court ruling on a motion to suppress, whether sought by the Commonwealth or the defendant, are discretionary and must be approved by a single justice of the Supreme Judicial Court acting under G. L. c. 278, § 28E, and Mass.R.Crim.P. 15. Jordan, 469 Mass. at 139 & n.10.

Judicial Court for Suffolk County up to forty days from the date of issuance of notice of the order that is the subject of appeal. In the present case, the order by the judge extending the Commonwealth's filing deadline to February 4, 2014, was invalid. The Commonwealth's subsequent motion for reconsideration thus did not provide the second judge with a basis upon which to grant relief.[8]

In Jordan, the court also explained that a single appellate judge or an appellate court has a broader authority to suspend or extend the time for filing notices of appeal. Id. at 142-143. Presumably, this broader authority extends both to the filing of the notice of appeal as well as to the application for leave to appeal. Jordan explained that this broader authority is enjoyed by a single justice of the Appeals Court as well as by a panel of this court. Ibid. Based on its interpretation of the relevant rules, the Jordan court indicated that when there

---

[8] Although it is not necessary to address the merits of the Commonwealth's February 19, 2014 motion for reconsideration, it should be noted that simply because a motion is cast as a motion for reconsideration does not mean that it qualifies as a motion for reconsideration. A genuine motion for reconsideration must be based on (1) a change in circumstances "such as (a) newly discovered evidence or information, or (b) a development of relevant law; or (2) a particular and demonstrable error in the original ruling or decision." Audubon Hill S. Condominium Assn. v. Community Assn. Underwriters of America, Inc., 82 Mass. App. Ct. 461, 470 (2012). A motion that simply requests that a judge revisit a decision made previously under the guise of exercising discretion is not a genuine motion for reconsideration.

has been a showing of "good cause," a single justice of either appellate court, as well as those courts, has the authority to exercise discretion and permit a party to file the two documents required to secure interlocutory appellate review of a ruling on a motion to suppress at any time so long as the two documents were filed within one year of the issuance of notice of the order that is the subject of the appeal. Id. at 143-144. In Jordan, the court added that the exercise of this discretion by a single justice or an appellate court to suspend the procedural rules governing interlocutory appeals of rulings on motion to suppress must be considered "an extraordinary, not an ordinary, event." Id. at 143.[9]

3. Suspension of the procedural rules. In the present case, it is unnecessary to address the Commonwealth's argument that the allowance of its application for leave to file an interlocutory appeal by a single justice of the Supreme Judicial

---

[9] In Jordan, the court also clarified the procedure that a party must follow in future cases. Essentially, the party that files an application for leave to file an interlocutory appeal must demonstrate that the two required documents have been filed in a timely manner (either within ten days of the issuance of notice of the order that is the subject of the appeal or within the time allowed by an extension order) or simultaneously submit a motion for an extension of time or a suspension of the rules along with an affidavit "setting forth in meaningful detail the reasons for the delay." Id. at 148. In all cases in which a party requires an extension of time or a suspension of the rules in order to proceed, the single justice will address that matter before reaching the merits of the application for leave to appeal. Ibid.

Court, which was ultimately allowed by the single justice on March 18, 2014, represents an implied suspension of the procedural rules governing applications for leave to file an interlocutory appeal from a ruling on a motion to suppress, and thus cures any timeliness issues. See id. at 143-144.[10] However, in Jordan, the Supreme Judicial Court added that in cases such as this, in which a late filed notice of appeal or application for leave to file an interlocutory appeal were pending appeal at the time of its decision, an appellate court, including a panel of this court, has discretion to suspend the otherwise applicable procedural rules for "good cause." Id. at 145, 149. As in Jordan, we determine that it is appropriate to do so in this case because until Jordan, there was a lack of certainty about the authority of trial judges to grant extensions of time in these cases, the merits are fully briefed, and the issue is one of importance.

4. The exit order and seizure of the electroshock weapon. In reviewing a ruling on a motion to suppress, we accept the motion judge's findings of fact absent clear error "but conduct[] an independent review of his ultimate findings and

---

[10] As in Jordan, "[w]e are loath to conclude that the single justice, on [her] own motion, without being requested, and without saying that [she] was doing so, meant to suspend (or should be deemed to have suspended) the rules" when such relief was not requested by the Commonwealth, and not addressed in the order entered by the single justice. Id. at 143-144 & n.19.

conclusions of law." Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).

Only one witness, Officer Brendon Reen of the Swampscott police department, testified at the motion hearing. The essential facts are not in dispute. The judge found that the vehicle operated by the defendant was properly stopped without incident because it lacked a valid inspection sticker. There were no passengers in the vehicle. The defendant complied with an order to produce his license and registration. The officer then noticed five or six small clumps of what appeared to be marijuana on the console. The defendant admitted the same and told the officer he had smoked marijuana five or six hours earlier. The officer did not suspect that the operator was under the influence of marijuana. The officer did not issue a citation for the civil infraction of possession of marijuana. See G. L. c. 40, § 21D. Meanwhile, a second police officer arrived on the scene. Officer Reen informed the defendant that he would like to conduct a search. The defendant said, "No." Officer Reen told the defendant that he had probable cause to search the vehicle. In response, the defendant, who was not secured by a seatbelt, suddenly turned away from the officer and, as the judge found, "lunged" toward the passenger's side of the backseat where there was a backpack.

The judge acknowledged that this sudden and unexpected movement by the defendant "changed [the] dynamic" of the encounter.  Although the judge did not make any further, specific findings of fact, his decision to credit Officer Reen's testimony authorizes us to imply additional findings that are consistent with the judge's other findings and the officer's testimony.  See Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 50 n.2 (2014).  In response to the lunge by the defendant, Officer Reen, who stated he was concerned for his safety, responded immediately by reaching through the open window, and putting his right hand on the defendant's left shoulder, which prevented the defendant from reaching into the backseat area.  He asked the defendant what he was doing.  The defendant stated that he was reaching for the bag in the backseat.  Officer Reen instructed the defendant to turn off the ignition and step out of the vehicle.  The defendant complied.  Officer Reen removed the backpack and placed it on the hood of the defendant's vehicle.  Officer Reen discovered the electroshock weapon (commonly known as a stun gun) referred to earlier in an open compartment in the driver's side door.[11]  After securing the weapon, Officer Reen

---

[11] The defendant did not argue below and does not argue on appeal that apart from the validity of the exit order, the subsequent search of the vehicle conducted by Officer Reen exceeded the scope of a valid protective search.  The uncontroverted testimony at the motion hearing indicates that the first area of the vehicle searched by Officer Reen was the

informed the defendant that it was illegal to possess a "stun gun." The defendant responded by stating that it was not his gun, and must belong to a friend.

Describing the ultimate question as "close," the judge ruled that the exit order was invalid because the defendant's act of reaching into the backseat was not sufficient to create a heightened awareness of danger. See Commonwealth v. Gonsalves, 429 Mass. 658, 664-665 (1999). This ruling is based on too

---

driver's side door where, in an open compartment, he found the stun gun inside a black, leather case.

In a case such as this, a police officer is allowed to make a limited protective search of the interior of the vehicle. "A Terry-type 'frisk' of the interior of an automobile may be justified under art. 14 of the Massachusetts Declaration of Rights by the concern that a driver or passenger returning to the vehicle may gain access to a weapon that may be used against the police, even though the driver and any passengers are permitted to reenter the vehicle and go on their way." Commonwealth v. Douglas, 86 Mass. App. Ct. 404, 411 (2014). Michigan v. Long, 463 U.S. 1032, 1049 (1983). See Commonwealth v. Graham, 78 Mass. App. Ct. 127, 129 (2010) (officer entitled to conduct protective sweep of vehicle confined in scope to intrusion reasonably designed to discover weapon, where concern extended to threats that might arise from retrieval of weapon in vehicle by occupant who was not placed under arrest but subjected to patfrisk); Commonwealth v. Myers, 82 Mass. App. Ct. 172, 177-178 (2012) (police entitled to conduct protective sweep of vehicle even though driver sat in back seat of cruiser after patfrisk and could no longer have reached inside vehicle, because he could have returned to vehicle and recovered hidden weapon at end of encounter). Once Officer Reen discovered the stun gun, an illegal weapon, he had probable cause to conduct a warrantless search of the entire automobile. See also Commonwealth v. Motta, 424 Mass. 117, 122-124 (1997); Johnson, 461 Mass. 44, 50 (2011); Commonwealth v. Jiminez, 22 Mass. App. Ct. 286, 290-291 (1986).

narrow a view of Gonsalves. When, during a traffic stop, the driver suddenly and without explanation lunges into the backseat area of the vehicle where a backpack that had not been inspected by the police is located, it is objectively reasonable for the officer to take protective measures, including the use of reasonable force to prevent the driver from reaching into the backseat followed by an exit order in order to gain control over the situation. This is what the Supreme Judicial Court had in mind when in Gonsalves it described what might justify an exit order: "the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car." Id. at 665, quoting from State v. Smith, 134 N.J. 599, 618 (1994). See Commonwealth v. Stampley, 437 Mass. 323, 325-326 (2002) ("To establish the reasonableness of an officer's belief that someone's safety is in danger during a stop, the Commonwealth is not required to make the specific showing that a driver or passenger has a weapon").

In concluding that Officer Reen had a valid concern for his safety and thus an objective basis for the exit order, we do not retreat from our observation in Commonwealth v. Hooker, 52 Mass. App. Ct. 683, 686 (2001), that "[a] citizen is not required to

sit absolutely motionless in a stopped vehicle." Nor do we deviate from the principles of objectivity and proportionality that this court and the Supreme Judicial Court have consistently applied in cases involving motor vehicle stops. See, e.g., Commonwealth v. Silva, 366 Mass. 402, 405 (1974); Commonwealth v. Torres, 433 Mass. 669, 672 (2001); Commonwealth v. Cruz, 459 Mass. 459, 476 (2011); Commonwealth v. Santos, 65 Mass. App. Ct. 122, 126-127 (2005). See also Commonwealth v. King, 389 Mass. 233, 243 (1983). Rather, the result we reach is a common sense application of the principle announced in Gonsalves, where the court observed that "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns, and, if the basis is there, a court will uphold the order." Id. at 664. The defendant's reliance on Commonwealth v. Daniel, 464 Mass. 746 (2013), is misplaced. The exit order in the present case, unlike in Daniel, was not undertaken in response to the officer's generalized suspicion that his safety was at risk. See id. at 752-753. Here, unlike in Daniel, the officer was faced with a specific, sudden, and unexpected movement by the driver into an area of the vehicle containing a backpack that, in turn, could conceal a weapon.

In a case involving a motor vehicle infraction such as an invalid inspection sticker, the detention of the vehicle and its

occupants must end when the driver produces a valid license and registration or when the officer completes the issuance of a citation or warning unless a development occurs that when viewed objectively is indicative of criminal activity or creates a heightened awareness of danger. See Commonwealth v. Torres, 424 Mass. 153, 158 (1997).[12] The motor vehicle stop in this case had not yet reached the point where the justification for the initial stop had expired because only a very brief time had elapsed, the officer had yet to issue a citation or warning, and the officer had not returned the defendant's license and registration. Even if we assume, without deciding, that Officer Reen's request for permission to search the vehicle was not justified because it exceeded the scope of a lawful inquiry in a case such as this, the Wong Sun doctrine[13] does not taint the

---

[12] The observation of a noncriminal amount of marijuana within the defendant's car is not sufficient justification for the continued detention of the vehicle beyond what is necessary for the issuance of a citation, even if only for the purpose of obtaining consent for a search. See Cruz, supra; Torres, 424 Mass. at 163; Commonwealth v. Robie, 51 Mass. App. Ct. 494, 497 (2001). Contrast Commonwealth v. Mateo-German, 453 Mass. 838, 844 (2009) (trooper present at scene of disabled vehicle and waiting with driver for arrival of friend who was bringing gasoline did not seize driver as result of their conversation; furthermore, after observing suspicious items in vehicle, and while driver continued to wait for his friend, trooper was entitled to ask defendant if he would consent to trooper's police dog sniffing exterior of vehicle).

[13] Wong Sun v. United States, 371 U.S. 471, 485-488 (1963) ("fruit of the poisonous tree").

officer's exit order and the discovery of the stun gun because both were the result of the defendant's independent and intervening act.  See King, supra, at 245.[14]

Conclusion.  For the above reasons, the order allowing the defendant's motion to suppress is reversed.[15]

So ordered.

---

[14] The fact that the officer stated incorrectly that he had probable cause to search the vehicle after discovering the presence of a small quantity of marijuana, see Commonwealth v. Cruz, 459 Mass. at 476, is of no consequence.  If during an encounter with a police officer, the officer makes an incorrect statement about what the law permits him to do in the circumstances, there is no justification for a person to use force against the officer or to make a movement which could reasonably be understood by the officer as a threat to the safety of the officer or anyone else who is present.  See Commonwealth v. Moreira, 388 Mass. 596, 600 (1983) ("If a police officer is making an illegal arrest, but without excessive force, the remedy is to be found in the courts").

[15] As the defendant's motion to suppress other items seized from his person and statements he subsequently made to the police was based entirely on the claim that the exit order and seizure of the stun gun was unlawful, that additional evidence is available for use at trial subject to any further orders made by the judge.