NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12866


COMMONWEALTH  vs.  DERON N. SILVELO.



Essex.       March 2, 2020.  -  October 14, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.[1]



Firearms.  Motor Vehicle, Firearms.  Constitutional Law, Search
     and seizure, Probable cause.  Search and Seizure, Motor
     vehicle, Probable cause.  Probable Cause.  Practice,
     Criminal, Motion to suppress, Instructions to jury,
     Argument by prosecutor.




     Complaints received and sworn to in the Lawrence Division
of the District Court Department on March 17, 2014, and December
4, 2015.

     A pretrial motion to suppress evidence was heard by Michael
A. Uhlarik, J., and a motion for reconsideration was considered
by him; and the case was tried before Holly V. Broadbent, J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Michelle A. Dame for the defendant.
     Catherine P. Sullivan, Assistant District Attorney, for the
Commonwealth.

---

     [1] Chief Justice Gants participated in the deliberation on
this case prior to his death.

LOWY, J.   The defendant was convicted by a jury of carrying a firearm without a license and possessing a loaded firearm.[2] His trial took place before our decision in Commonwealth v. Brown, 479 Mass. 600, 601 (2018), in which we concluded that in order to convict a defendant of unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n), the Commonwealth has to prove that the defendant knew that the firearm was loaded.  Thus, the judge did not instruct the jury on this element of the crime. The Appeals Court affirmed the convictions, and we granted the defendant's application for further appellate review.  See Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 86-87 (2019).

The defendant contends that (1) the motion judge erred in denying the defendant's motion to suppress the firearm; (2) there was insufficient evidence to sustain the conviction of possession of a loaded firearm; (3) the failure to instruct that jury that the defendant had to know that the firearm was loaded created a substantial risk of a miscarriage of justice on that

---

[2] On the first day of trial, the Commonwealth dismissed the indictment for possession of ammunition without an FID card. The defendant also faced a civil infraction for failing to wear a seat belt, pursuant to G. L. c. 90, § 13A, for which the trial judge found the defendant responsible; the charge was filed.

The judge sentenced the defendant to eighteen months imprisonment on the charge of carrying a firearm without a license, and to two years of probation on the charge of carrying a loaded firearm without a license, to run from and after the completion of his prison sentence.

charge; and (4) the prosecutor's closing arguments contained misconduct that created a substantial risk of a miscarriage of justice.

We affirm the motion judge's denial of the motion to suppress. We also determine that the evidence was so overwhelming that we have no serious doubt that a rational jury could have concluded that the defendant knew that the revolver he possessed was loaded had the judge properly instructed them, and therefore, we affirm the conviction under G. L. c. 269, § 10 (n). Commonwealth v. Lutskov, 480 Mass. 575, 581 (2018).

1. Background. At around 11:15 P.M. on March 16, 2014, a State police trooper initiated a vehicle stop on a busy interstate highway due to an invalid inspection status. Once the car stopped, the trooper approached from the passenger's side to avoid traffic. While approaching, he observed at least four people in the back seat, including children or infants, and he noticed the defendant in the front passenger's seat attempting to fasten a seat belt. Consequently, the trooper requested identification not only from the driver, but also from the defendant.

As the defendant reached for his identification, the trooper observed a black object, which he believed to be a weapon because of its size and color, fall out of the defendant's pocket between his seat and the center console. The

trooper returned to his cruiser and discovered that the defendant had outstanding warrants. Rather than act by himself on that information, the trooper requested backup. When backup arrived, the trooper arrested the defendant on the warrants, handcuffed him, and placed him in the cruiser. The trooper immediately searched the front passenger's seat area of the stopped car and found a revolver. He flipped open the revolver portion and saw four of the chamber's five openings filled with ammunition.

2. Discussion. a. Motion to suppress. The defendant appeals from the order denying his motion to suppress the firearm evidence as fruits of an unconstitutional automobile search.[3] "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law" (quotation and citation omitted). Commonwealth v. Perkins, 465 Mass. 600, 601 (2013), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

At the hearing on the motion, the trooper testified on direct examination that he saw a dark object he believed to be a firearm fall from the defendant's pocket. On cross-examination, the trooper indicated that he was not one hundred percent sure

---

[3] The defendant's motion for reconsideration also was denied.

that it was a firearm. He testified that he saw "[a] dark object that could resemble a weapon." The motion judge credited the trooper's testimony and found that the trooper observed the "defendant remove[] what appeared to be a gun from his pants pocket.". The motion judge determined that the trooper's concern for his own safety reasonably justified the protective sweep of a vehicle pursuant to Terry v. Ohio, 392 U.S. 1, 30 (1968).

Under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, warrantless searches are presumptively "unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009), quoting Katz v. United States, 389 U.S. 347, 357 (1967). See also Perkins, 465 Mass. at 603. Because the trooper had no search warrant, the Commonwealth bears the burden of establishing that the stop and frisk "exception[] to the warrant requirement" applies.[4] Perkins, supra at 603.

---

[4] "In 'stop and frisk' cases, there is a two-step analysis: whether the initiation of the investigation by the police was permissible in the circumstances and whether the scope of the search was justified." Commonwealth v. Torres, 433 Mass. 669, 672 (2001). In his motion to suppress, the defendant argued that the first prong was not justified because the stop of the vehicle, the request for the defendant's identification, and his arrest were unconstitutional. He is no longer pursuing those contentions.

The "stop and frisk" exception to the warrant requirement permits a police officer without probable cause both to stop a vehicle, and to "conduct a limited [vehicle] search for weapons if . . . 'reasonably prudent'" people in the officer's position would justifiably fear for their safety or that of other persons. Commonwealth v. Daniel, 464 Mass. 746, 752 (2013), quoting Commonwealth v. Silva, 366 Mass. 402, 406 (1974). See Commonwealth v. Manha, 479 Mass. 44, 49 (2018) (Terry-type protective sweep may extend to limited search of automobile). The officer's fear must be grounded in "specific, articulable facts and reasonable inferences drawn therefrom" (citation omitted). Commonwealth v. Edwards, 476 Mass. 341, 345 (2017). To determine reasonableness, we "balanc[e] the need to search . . . against the invasion which the search . . . entails" (citation omitted). Silva, 366 Mass. at 405.

Warrantless searches of vehicles are justified where an officer would reasonably fear that the defendant may possess a weapon or that there is a weapon in the vehicle. See Daniel, 464 Mass. at 752. Even where the officers ask the defendant to get out of the vehicle, they may reasonably fear for their safety because any other occupant may access a weapon left behind by the defendant, or the defendant may access a weapon left behind upon returning to the vehicle. See Commonwealth v. Santiago, 53 Mass. App. Ct. 567, 571 (2002) (officer "not

required to risk becoming a victim upon the suspect's reentry into the vehicle").

Although the trooper here had already arrested the defendant prior to the search, and the defendant could not return to the vehicle to access a weapon, the evidence nevertheless supports the motion judge's conclusion that a reasonable officer would continue to have safety concerns under the circumstances. Contrast Edwards, 476 Mass. at 349. The trooper observed a weapon fall from the defendant's pocket when he first approached the vehicle. See Commonwealth v. Robbins, 407 Mass. 147, 152 (1990) (protective search of automobile justified because police saw wooden object consistent with weapon handle). Given that other adults remained in the vehicle after the trooper arrested the defendant, the trooper's concern that the revolver "could [still] be used against" him was reasonable. Id. The search was therefore constitutionally permissible because a "reasonably prudent" trooper would not only have personal safety concerns, but also would appreciate that the other passengers might retrieve the weapon and harm the trooper, themselves, or others. Daniel, 464 Mass. at 752, quoting Silva, 366 Mass. at 406. See Commonwealth v. Graham, 78 Mass. App. Ct. 127, 129 (2010).[5]

---

[5] We note that other theories might justify the search of the defendant's vehicle, such as a search incident to arrest. A

b.  Erroneous jury instruction.  Because our decision in Brown relied upon statutory interpretation, we apply its rule retroactively.[6]  See Commonwealth v. Paul, 96 Mass. App. Ct. 263, 265-266 (2019).  Therefore, the trial judge's jury instruction omitted an essential element required to convict a defendant of violating G. L. c. 269, § 10 (n):  whether the defendant knew the gun he possessed was loaded.  Because the defendant did not object to the instruction, we determine whether the error created a substantial risk of a miscarriage of justice, which requires us to order a new trial if "we have a serious doubt whether the result of the trial might have been different had the error not been made" (quotations omitted).  Commonwealth v. Sherman, 481 Mass. 464, 475-476 (2019).[7]

_____

search of a vehicle is constitutional following a defendant's arrest, either to seize evidence of the offense for which the defendant was arrested or to remove weapons that the defendant might use to resist arrest or to escape.  See G. L. c. 276, § 1. See also Commonwealth v. Perkins, 465 Mass. 600, 605 (2013), quoting Arizona v. Gant, 556 U.S. 332, 344 (2009).  The trooper here had secured the defendant in the police cruiser at the time of the search, so we do not reach the issue whether the officer's justification to search for weapons incident to arrest under G. L. c. 276, § 1, dissipated when he waited for backup before making the arrest.

[6] The jury returned the guilty verdicts in the defendant's case more than one year before we released Brown.

[7] We have noted multiple times that "this standard is particularly well suited to a situation, such as here, where the elements of a crime are erroneously stated in the jury charge." Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).  See Commonwealth v. Amirault, 424 Mass. 618, 647

To assess whether a jury instruction omitting an essential element of a crime created a substantial risk of a miscarriage of justice, we evaluate the evidence as a whole to determine whether the evidence was "so overwhelming" that "there is no likelihood that the omitted instruction materially influenced the jury's verdict[]."[8]  Lutskov, 480 Mass. at 581.[9]  See Commonwealth v. Gabbidon, 398 Mass. 1, 5 (1986) ("no harm accrues to a defendant if an error does not relate to an issue actively contested at trial").  Cf. Commonwealth v. Gilbert, 447 Mass. 161, 173-174 (2006) (no substantial risk of miscarriage of justice where evidence required jury to find element omitted from instruction).

---

n.21 (1997) ("This standard is well suited to these cases because, when the elements of a crime are incorrectly stated, there is a substantial risk that a person has been convicted for a course of conduct that is not criminal at all.").

[8] Because we conclude that the Commonwealth presented evidence "so overwhelming" that "there was no likelihood that the omitted instruction materially influenced the jury's verdict[]," Commonwealth v. Lutskov, 480 Mass. 575, 581 (2018), we conclude that the Commonwealth necessarily presented sufficient evidence for a rational jury to convict the defendant of possessing a loaded firearm.

[9] We recognize that this formulation diverges from Azar, 435 Mass. at 688, under which we analyzed whether the "evidence required the jury to [have found]" or to have "ineluctably inferred" that the Commonwealth carried its burden of proving the omitted element beyond a reasonable doubt.  We do not intend this semantic difference in language to change the stringency of the standard announced in Azar with this formulation.

Without direct evidence that the defendant knew the gun was loaded, and with almost no discussion of the question at the hearing on the motion to suppress or at trial, we evaluate the circumstantial evidence, see Brown, 479 Mass. at 608, to determine whether the evidence was "so overwhelming" that we have no serious doubt that a rational jury could have concluded the defendant knew the revolver he possessed was loaded. Lutskov, 480 Mass. at 581. Although the standard is a high one, we do not dispense with common sense when evaluating the evidence. See Commonwealth v. Russell, 439 Mass. 340, 351 (2003) ("As the terminology implies, a 'substantial risk of a miscarriage of justice' refers to a risk that has some genuine substance to it. That standard does not encompass an abstract, theoretical possibility of a miscarriage of justice, utterly divorced from the case as it was tried").

The Commonwealth's case was strong. The principal evidence presented by the Commonwealth was that the defendant had a loaded revolver in his pants pocket, which the trooper saw fall to the floor of the car. Moreover, the Commonwealth entered the revolver in evidence, for the jury to view during deliberations. The jury therefore would have observed that the ammunition would have been clearly visible in the chamber given the revolver's configuration. The revolver could hold five bullets in the cylinder, and it was loaded with four bullets when the trooper

seized it.  Even if one of the bullets was in the chamber, and therefore not visible in the cylinder, at least three bullets in the cylinder would have remained visible to the defendant.  See Commonwealth v. Jefferson, 461 Mass. 821, 828 n.7 (2012) (because "the firearm was a revolver located in a vehicle, a rational jury could infer that those who possessed the firearm knew that it was loaded with ammunition").  See also Commonwealth v. Resende, 94 Mass. App. Ct. 194, 200 (2018) (jury reasonably could have concluded that defendant would have checked to see if firearm was loaded before he put it in his waistband to infer defendant knew firearm loaded).  But see Commonwealth v. Grayson, 96 Mass. App. Ct. 748, 752-753 (2019) (inference from waistband evidence alone insufficient).

Given that we had not decided Brown at the time of trial, it is understandable that the defendant did not argue that the Commonwealth failed to present any evidence that he knew the revolver was loaded.  The defendant's position at trial was that he never possessed the firearm that the officer testified fell out of the defendant's pocket.  Considering the mandatory minimum sentence the defendant was facing for carrying a firearm,[10] it is unlikely in the extreme that the defendant would have challenged the Commonwealth's proof.

---

[10] The mandatory minimum for possessing a firearm without a license is eighteen months.  See G. L. c. 269, § 10 (a).

Rather, the defendant argued that he did not know that the revolver was in the vehicle because the previous owner of the car, from whom the defendant's mother had purchased the car a week before the arrest, must have left the revolver under the passenger seat. However, the defendant's mother also testified that she inspected the car closely before purchasing it and that she kept it very clean. The jury credited the trooper's testimony in finding that the defendant possessed the firearm. It is therefore difficult to imagine a rational jury, using their common sense, finding that the defendant carried the revolver, but that he did not know it was loaded. The omitted essential element of knowledge that the firearm was loaded did not create a substantial risk of a miscarriage of justice. See Lutskov, 480 Mass. at 581.

d. Prosecutor's closing arguments. Finally, the defendant contends that errors in the prosecutor's closing argument, to which the defendant did not object at trial, collectively created a substantial risk of a miscarriage of justice. See Commonwealth v. Kozec, 399 Mass. 514, 518 n.8 (1987). We evaluate the closing arguments as a whole, in light of the strength of the evidence presented at trial, to determine whether we have a serious doubt that any discovered errors would have led to a different outcome at trial. See Commonwealth v. Cole, 473 Mass. 317, 333 (2015), overruled on another ground,

Commonwealth v. Wardsworth, 482 Mass. 454 (2019). Although we conclude that there was no error, following closely the reasons stated in the Appeals Court decision, see Silvelo, 96 Mass. App. Ct. at 91-93, we take this opportunity to remind prosecutors to avoid improper vouching.

During closing, the prosecutor deployed the pronoun "we" when arguing that the trooper acted properly in deescalating the situation instead of immediately arresting the defendant upon observing what the trooper presumed to be a gun fall from the defendant's pocket. The prosecutor stated: "We don't know what would have happened if [the trooper] would have removed [the defendant] when [the trooper] first sees that firearm. We don't know that. What we do know is what he saw, what he did, and we're here as a result of it, on a deescalated situation." The defendant alleges that by using the pronoun "we," the prosecutor improperly aligned himself with the jury.

"A prosecutor's position is a delicate one. The prosecutor must be free to argue that such a witness is credible, but may not explicitly or implicitly vouch to the jury that he or she knows that the witness's testimony is true." Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989). Improper vouching includes suggestions that the prosecutor has personal knowledge of the veracity of a witness's testimony or knowledge about the case independent of the evidence before the jury. See id. See also

Commonwealth v. Carney, 472 Mass. 252, 258 (2015). When it comes to the use of a first person pronoun, "it is preferable that counsel avoid arguing in a form that seeks to engage the jury with him or her personally," but the "[m]ere[] us[e of] a first person pronoun does not interject personal belief into a statement" (quotations and citation omitted). Commonwealth v. Jenkins, 458 Mass. 791, 797 (2011). We remind prosecutors that arguments that suggest that the jury should be on the side of the government, instead of being judges of the facts and impartial arbiters of the application of the burden of proof, interferes with the equality of all parties before the bar of justice.

Notwithstanding our caution against the use of "we," we conclude that the prosecutor here did not intend to align himself with the jury or to vouch improperly for the trooper's credibility. The prosecutor merely summarized what the trooper, not the prosecutor, knew to be true, and responded to the defendant's closing, which repeatedly questioned the trooper's credibility because he did not react immediately to seeing what he presumed to be a gun fall from the defendant's pocket. There was no error.

3. Conclusion. For the foregoing reasons, we affirm the defendant's convictions of carrying a firearm without a license and of possessing a loaded firearm.

<u>So ordered</u>.