NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11824

COMMONWEALTH  vs.  JASON DOUGLAS
(and five companion cases[1]).


Suffolk.     April 6, 2015. - August 14, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Lenk,
JJ.


Constitutional Law, Search and seizure, Stop and frisk,
     Reasonable suspicion.  Search and Seizure, Motor vehicle,
     Protective sweep, Threshold police inquiry, Reasonable
     suspicion.  Threshold Police Inquiry.  Firearms.  Practice,
     Criminal, Motion to suppress.



     Indictments found and returned in the Superior Court
Department on September 28, 2011.

     Pretrial motions to suppress evidence were heard by Janet
L. Sanders, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Cordy, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  After review by that court, the Supreme
Judicial Court granted leave to obtain further appellate review.


     Daniel R. Katz for Wayne Steed.
     Michael Tumposky for Jason Douglas.

_____

     [1] Two against Jason Douglas and three against Wayne Steed.

Donna Jalbert Patalano, Assistant District Attorney (Joseph F. Janezic, III, Assistant District Attorney, with her) for the Commonwealth.

DUFFLY, J.  Following a traffic stop for a civil motor vehicle infraction (failure to use a directional signal) of a motor vehicle that they had had under surveillance, Boston police officers ordered first the rear seat passenger sitting behind the driver, then the rear seat passenger on the passenger's side, to get out of the vehicle, and pat frisked each for weapons, on the suspicion that they were armed and dangerous.  No weapons were found.  While the rear seat passengers remained outside the vehicle, as instructed, the front seat passenger, defendant Jason Douglas, got out of the vehicle and was ordered to return to his seat.  After he did so, he moved the gear shift in the center console to the "drive" position, while the driver kept her foot on the brake.  Douglas was ordered from the vehicle and pat frisked, and the driver also was ordered from the vehicle.  Finding no weapon on Douglas's person, officers conducted a protective sweep of the vehicle.  They discovered a loaded firearm under the front passenger seat.

Douglas and his codefendant, Wayne Steed, who had been seated behind him, were charged with unlicensed possession of a

firearm and related offenses.[2] Both defendants moved to suppress the evidence seized as a result of the search. After an evidentiary hearing, a Superior Court judge allowed their motions. A single justice of this court allowed the Commonwealth's application for leave to pursue an interlocutory appeal to the Appeals Court, and the Appeals Court reversed the allowance of the motions to suppress. See Commonwealth v. Douglas, 86 Mass. App. Ct. 404, 405 (2014). We granted the defendants' applications for further appellate review.

We conclude that, even if the patfrisks of the rear seat passengers were invalid, Douglas's action in shifting the automobile into "drive" during the course of the stop, in conjunction with the circumstances of the stop and other information known to the officers at the time, supported the officers' suspicion that Douglas might be armed and dangerous, and that a limited protective sweep of the vehicle was necessary for officer safety. We therefore conclude that the motions to suppress should not have been allowed, but on grounds different

---

[2] Jason Douglas was charged with carrying a firearm without a license, second offense, G. L. c. 269, § 10 (a), (d); possession of a firearm without a firearms identification (FID) card, G. L. c. 269, § 10 (h); and unlawful possession of ammunition, G. L. c. 269, § 10 (n). Wayne Steed was charged with carrying a firearm without a license as an armed career criminal, G. L. c. 269, §§ 10 (a), 10G; possession of a firearm without an FID card, G. L. c. 269, § 10 (h); and unlawful possession of ammunition, G. L. c. 269, § 10 (n).

from those relied upon by the Appeals Court, essentially for the reasons cited by the concurring opinion. See Commonwealth v. Douglas, supra at 416-418 (Rubin, J., concurring).

1. Background. The sole witness at the hearing on the motions to suppress was Boston police Officer Liam Hawkins, who was one of the arresting officers and was the officer who conducted the patfrisk of Douglas. Based on Hawkins's testimony, the motion judge found the following.

a. The stop. On an evening in April, 2011, members of the Boston police department's youth violence strike force were conducting surveillance of a party at a Boston nightclub. The party was being held to celebrate the successful release on the Internet of a video recording that had been produced by a group of individuals living on Annunciation Road in Boston. The group had been involved in a rivalry with another group of individuals from the Orchard Park housing development that had resulted in prior violence, and the surveillance was intended to gather information about the members of the group. The officers also had stationed "take down" vehicles in the vicinity, to make stops as requested. When the party ended, police followed and stopped some of the attendees in what was known as "field interrogation observations." Some partygoers were followed to a restaurant in the Chinatown area of Boston, where officers

conducted surveillance of the parking lot.

At approximately 3 A.M., Sergeant Detective Joseph Sullivan observed a group of four individuals, three men and a woman, leave the restaurant and get into an automobile. One of the men was the defendant Douglas, who had had many prior dealings with law enforcement and had a criminal record that included at least one conviction of possession of a firearm. Sullivan reported that another of the men, later identified as the defendant Steed, was wearing a hooded sweatshirt and had been holding his hands close to his body, in the front pockets of his sweatshirt. As the vehicle was leaving the parking lot, with the woman driving, Sullivan noticed that the driver had not used a directional signal. He radioed this information to Officers Hawkins and Mathew Wosny, who were driving an unmarked "take down" vehicle. Hawkins and Wosny followed the vehicle as it traveled along Essex Street, and saw it turn onto Surface Road, again without using a turn signal. The officers activated their blue lights and siren and stopped the vehicle on the entrance ramp to Route I-93 South, for the civil motor vehicle infraction.

The motion judge further found:

"Hawkins approached the passenger side of the vehicle, and Wosny approached the driver's side. Hawkins noticed that the individual seated behind the driver (later identified as Shakeem Johnson), was turning toward the

middle of the car, so that his hands were not visible. Hawkins knew that Johnson had a criminal record; because of that and his movement, Wosny ordered him out of the car. He pat frisked Johnson (who was heavily intoxicated) and found nothing, concluding that what Johnson was in fact doing inside the car was removing his seatbelt. On the other side of the car, Hawkins noticed that the individual in the back seat beside Johnson (later identified in court as the defendant Steed), was staring straight ahead, with at least one hand in the front pocket of his sweatshirt. Regarding this as unusual, Hawkins ordered him out of the car and pat frisked him; nothing was found. Douglas, seated in the front, was by this time expressing his displeasure at the stop, and on his own got out of the car to talk to officers. Hawkins ordered him to get back inside, which he did. Hawkins noticed that Douglas moved the gear shift on the center console from the 'park' position to 'drive.' The car did not move, because the driver, [Rheanna] Reese, had her foot on the brake. Hawkins ordered Douglas to place the vehicle back in 'park.' Douglas complied."

Other officers had by this time arrived to assist Hawkins and Wosny. Douglas and the driver were ordered out of the vehicle and Douglas was pat frisked. Nothing was found. More officers arrived. Hawkins then searched the passenger compartment of the vehicle and found a firearm underneath the front passenger seat. All four of the vehicle's occupants were detained; Steed and Douglas later were charged with firearms offenses.

b. <u>Motions to suppress</u>. In allowing the defendants' motions to suppress, the judge concluded that "there was little if any information that any one of [the occupants] posed any kind of danger to the officers"; the search of each occupant did

not result in any such information; and any possible suspicion that another officer might have had, based on his earlier observation of one of the occupants, later identified as Steed, before Steed entered the vehicle, as well as any suspicion of Johnson, based on his action inside the vehicle, had dissipated when no weapon was discovered following their patfrisks. The judge found also that, although Douglas moved the gear shift, "the car did not move and he shifted the car back into park before he too was pat frisked," and that there was no indication that the driver was armed and dangerous. Concluding that the exit orders and patfrisks were invalid, the judge determined that no further analysis was required because whatever occurred following the patfrisks was tainted by the invalid exit orders.

The Appeals Court, in a divided opinion, determined that the officers had reasonable suspicion to issue the exit orders and to pat frisk the vehicle's occupants. See Commonwealth v. Douglas, 86 Mass. App. Ct. 404, 412 (2014). The court concluded further that, when no weapons were found as a result of the patfrisks,[3] the reasonable suspicion only increased, and the

---

[3] The judge found that the driver was pat frisked, but there was no testimony to support this finding. Boston police Officer Liam Hawkins testified that he believed that the driver was not pat frisked because he recalled that there was no female officer present, and that, based on the driver's attire, Hawkins observed nothing "that would be alarming."

officers were justified in conducting a protective search of the vehicle for weapons.[4]  See id.

We conclude that, even assuming that the patfrisk of the rear seat passengers was based on a reasonable suspicion that they were armed and dangerous, any suspicion dissipated when no weapon was found on either individual, and there was no justification at that point to conduct a protective sweep of the vehicle.  We agree with the analysis in the concurrence, however, see id. at 416-418 (Rubin, J., concurring), that Douglas's subsequent conduct in leaving the vehicle unbidden and, when he was ordered to return to his seat, in shifting from "park" to "drive," considered in the totality of the circumstances and in light of other information known to the officers, provided reasonable suspicion that Douglas had a weapon either on his person or within reach inside the vehicle, and therefore that the exit order and patfrisk of Douglas, and

---

[4] The Appeals Court's decision relies substantially on testimony by Hawkins that is not included in the judge's findings, on the ground that the judge implicitly credited the testimony because it was uncontroverted.  Nothing in the judge's decision indicates that she implicitly credited this testimony; to the contrary, the decision suggests that she did not.  In any event, a reviewing court may not supplement a motion judge's findings of fact with additional testimony that is not controverted because only one witness testified, in order to reverse the judge's decision.  See Commonwealth v. Jones-Pannell, 472 Mass.    ,    (2015).

the protective sweep of the vehicle underneath the seat he had occupied, were permissible.[5]

2. Discussion. "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law.'" Commonwealth v. Ramos, 470 Mass. 740, 742 (2015), quoting Commonwealth v. Colon, 449 Mass. 207, 214, cert. denied, 552 U.S. 1079 (2007). "Although an appellate court may supplement a motion judge's subsidiary findings with evidence from the record that 'is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony,'" "the mere absence of contradiction is not enough to permit supplementation with facts not found by the judge." Commonwealth v. Jones-Pannell, 472 Mass.    ,    ,     (2015), quoting Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008). "[I]n no event is it proper for an appellate court to engage in what

---

[5] The Commonwealth contends also that the motions to suppress should have been dismissed because the defendants' affidavits in support of those motions did not meet the requirements of Mass. R. Crim. P. 13, as appearing in 442 Mass. 1516 (2004). Where, as here, the Commonwealth does not move before the hearing for "a more particularized affidavit or move[] that the motion to suppress be denied without a hearing," the Commonwealth will be deemed to have "waived any objection to the particularity of the defendant's affidavit pursuant to rule 13(a)(2)." See Commonwealth v. Mubdi, 456 Mass. 385, 390-391 (2010).

amounts to independent fact finding in order to reach a conclusion of law that is contrary to that of a motion judge who has seen and heard the witnesses, and made determinations regarding the weight and credibility of their testimony." Commonwealth v. Jones-Pannell, supra at   .

Because Hawkins and Wosny observed a traffic violation, they were warranted in making the initial stop of the vehicle, notwithstanding their subjective intentions in making the stop. See Commonwealth v. Santana, 420 Mass. 205, 207, 210 (1995).  We thus consider whether, at each step of the officers' interaction with the vehicle's occupants, the officers' conduct was "no more intrusive than necessary . . . to effectuate both the safe conclusion to the traffic stop and the further investigation of the suspicious conduct."  See Commonwealth v. Torres, 433 Mass. 669, 675 (2001).

Following a routine traffic stop, police may "order the driver or the passengers to leave the automobile . . . only if they have a reasonable belief that their safety, or the safety of others, is in danger."  Id. at 673.  A police officer may conduct a patfrisk of an individual ordered to leave the vehicle only if the officer has a reasonable basis to suspect that the individual is likely to be armed and dangerous.  Commonwealth v. Johnson, 454 Mass. 159, 162 (2009).

The motion judge determined that Johnson's turning toward the middle of the vehicle, and Steed's holding of his hand in his pocket, while staring straight ahead, did not give rise to a reasonable suspicion that either was armed and dangerous.  She determined further that, even if these actions did indeed give rise to a reasonable suspicion to justify the exit orders and subsequent patfrisks of each of them, any reasonable suspicion that either had a weapon on his person was dissipated after the patfrisks revealed no weapons.  We agree.  Even assuming that the officer had a reasonable basis to remove Johnson from the rear seat, based on his observation of Johnson's motion (a determination we need not reach), after pat frisking Johnson, the officer determined that an intoxicated Johnson had not been reaching for a weapon, but, rather, had been attempting to remove his seat belt.  Thus, as the judge found, any reasonable suspicion was dissipated.  Similarly, the patfrisk of Steed dissipated any reasonable suspicion that he was concealing a weapon by holding his hand close to his body in the front pocket of his sweatshirt.  Once these "potential threat[s] to the officer[s'] safety w[ere] dispelled and there was no reasonable suspicion that criminal activity was afoot, any basis for further detention evaporated."  Commonwealth v. Torres, 424 Mass. 153, 159 (1997).

When the patfrisks revealed that neither Johnson nor Steed had a weapon, there was no reasonable suspicion to justify a protective sweep of the automobile. The actions giving rise to the initial suspicion of the rear seat passengers were only as to their persons; the officers did not observe any motion, such as bending down out of sight, that suggested reaching for or placing a weapon on the floor. Just as the officers' suspicions had been dispelled, however, Douglas's additional conduct, in conjunction with the other circumstances here, provided reasonable suspicion that Douglas was armed and dangerous, and either had a weapon on his person or had concealed it in the area where he had been sitting. "An officer who does not have probable cause to search an automobile for evidence of a crime or contraband may nonetheless conduct a limited search for weapons if 'a reasonably prudent [officer] in [the officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger.'" Commonwealth v. Daniel, 464 Mass. 746, 752 (2013), quoting Commonwealth v. Silva, 366 Mass. 402, 406 (1974). Such a protective search must be "'confined in scope to an intrusion reasonably designed to discover' a weapon," Commonwealth v. Moses, 408 Mass 136, 144 (1990), quoting Commonwealth v. Silva, supra at 408, and "'must be confined to the area from which the suspect might gain

possession of a weapon,' either because he is still within the vehicle or because he is likely to return to the vehicle at the conclusion of the officer's inquiry."  Commonwealth v. Daniel, supra, quoting Commonwealth v. Almeida, 373 Mass. 266, 272 (1977), S.C., 381 Mass. 420 (1980).

Douglas's actions in getting out of the vehicle unasked, confronting Hawkins, and then shifting the vehicle into "drive" could have suggested to a reasonable officer that Douglas was attempting to conceal a weapon, either on his person or in the vehicle, and was willing to risk flight and possibly an automobile chase.  See Commonwealth v. Maldonado, 55 Mass. App. Ct. 450, 454 (2002), S.C., 439 Mass. 460 (2003), and cases cited (intervening act removed taint of original search where defendant returned to vehicle after patfrisk and was "fidgeting," prompting officer to find gun in his lap). Moreover, at the point when Douglas first stepped out of the vehicle, unasked, and then, upon being ordered to return to the vehicle, moved the gearshift from "park" to "drive," the police knew that the four occupants had been at a party earlier in the evening hosted by a group that had been involved in a long-standing rivalry with another group, and that the rivalry had resulted in acts of violence.  See Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 841 (2010).  The police also were aware that

Douglas previously had been convicted of possession of a firearm. See Roe v. Attorney Gen., 434 Mass. 418, 442 (2001); Commonwealth v. Dasilva, 66 Mass. App. Ct. 556, 561 (2006).

We agree with the concurrence in the Douglas case that, unlike Johnson's and Steed's actions, Douglas's acts of leaving the vehicle unasked, expressing displeasure to the officer, and then shifting the vehicle into drive after he returned to his seat could have indicated to a reasonable officer that Douglas might be in possession of a firearm, either on his person or within his reach inside the vehicle. Douglas's actions, combined with the occupants' activities earlier that evening, and the officers' knowledge, were sufficient to support a reasonable suspicion that Douglas either had a weapon on his person or that there was a weapon in the vehicle, within his reach, and removed any possible taint from the earlier exit orders. See, e.g., Commonwealth v. Fredette, 396 Mass. 455, 458-460 (1985), and cases cited; Commonwealth v. Mock, 54 Mass. App. Ct. 276, 284 (2002), quoting Commonwealth v. Borges, 395 Mass 788, 795 (2002), and cases cited. Contrast Commonwealth v. Martin, 457 Mass. 14, 19-22 (2010) (defendant's act in pushing officer's hands away did not remove taint of impermissible stop and patfrisk where officer did not base his renewed attempt to pat frisk on defendant's act). When the patfrisk of Douglas

revealed no weapon, the officers continued to have a reasonable suspicion that there might be a weapon in the vehicle.  Thus, it was permissible that the officers conduct a protective sweep before allowing Douglas and the other occupants to reenter the vehicle.

<u>Order allowing motions</u>
<u>to suppress reversed</u>.