NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-938                                          Appeals Court

COMMONWEALTH  vs.  KINGSLEY ATWERI.

No. 24-P-938.

Worcester.     September 16, 2025. – March 11, 2026.

Present:  Rubin, D'Angelo, & Toone, JJ.


Firearms.  Controlled Substances.  Motor Vehicle, Firearms.
    Search and Seizure, Motor vehicle, Reasonable suspicion,
    Plain view.  Constitutional Law, Search and seizure,
    Reasonable suspicion.  Practice, Criminal, Motion to
    suppress.



    Complaint received and sworn to in the Worcester Division
of the District Court Department on February 22, 2022.

    A pretrial motion to suppress evidence was heard by Steven
D. Power, J., a motion for reconsideration was considered by
him, and the case was also heard by him.


    David J. Rotondo for the defendant.
    Anne S. Kennedy, Assistant District Attorney, for the
Commonwealth.


    RUBIN, J.  After a District Court judge (motion judge)

denied the defendant's motion to suppress, the defendant,

Kingsley Atweri, was found guilty after a bench trial before the

same judge of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n), carrying a firearm without a license, G. L. c. 269, § 10 (a), and possession of a class B drug, G. L. c. 94C, § 34.[1]  On appeal, the defendant argues that an exit order and the subsequent search of the vehicle from which he had been removed were impermissible, and that the denial of a motion to suppress he filed before trial was therefore in error.  We conclude that both the exit order and the protective search of the car were justified, and thus we affirm.

Background.  We summarize the facts found by the motion judge, supplemented by uncontroverted testimony that the motion judge implicitly or explicitly credited.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  When reviewing a ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error." Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  Nevertheless, "[w]e review independently the application of constitutional principles to the facts found."  Id.  At the October 6, 2023 hearing, the motion judge heard from Worcester Police Officers Alexander Maracallo and Peter Bissonnette, and the motion judge explicitly credited their testimony.

---

[1] The defendant was also found responsible for failure to signal, G. L. c. 90, § 14B.

On the morning of February 18, 2022, Maracallo was on Main Street in Worcester, near traffic lights at the intersection of Main Street and King Street, facing toward downtown Worcester. He was in plain clothes and in an unmarked vehicle.

At approximately 9:50 A.M., Maracallo observed a black Hyundai motor vehicle pull up next to him. It had extremely tinted windows, and he could not see into the car. The vehicle abruptly turned onto King Street, parked in a no parking zone for a few seconds, then abruptly did a three-point turn. Prior to this, Maracallo had already decided to stop the motor vehicle because of the tinted windows. Cf. G. L. c. 90, § 9D (regulating permissible degree of tinting of motor vehicle windows operated on public ways). Maracallo followed the vehicle for some distance and noted that, on several occasions, the operator did not signal when turning. Maracallo radioed other officers. Officers Bissonnette and Rocky Ductan, among others, responded that they would stop the vehicle in their marked cruisers.

Bissonnette encountered the defendant's vehicle and Maracallo's unmarked vehicle at the intersection of King Street and Chandler Street and followed Maracallo's vehicle. After Bissonnette activated the lights of the cruiser he was driving, the defendant's vehicle pulled over in a parking lot near 221 Chandler Street. The area in which the vehicle was stopped,

like the area in which Maracallo first encountered it, was a high crime area.

When Bissonnette and Ductan approached the vehicle, Bissonnette could not see clearly into the vehicle due to the tinted windows, but he could clearly see shadows of the defendant, who was the operator, leaning his whole body over toward the front passenger seat floor. Bissonnette saw the defendant move specifically toward the front passenger seat floor, not toward the glove box. Ductan approached the driver's side of the vehicle, and Bissonnette approached the passenger's side. The defendant did not follow a command to keep his window down; instead, he raised and lowered the window once or twice. Bissonnette described the defendant as moving in a "herky jerky" manner, in the sense that he "wouldn't sit still," and appearing nervous.[2] Bissonnette was concerned for his safety and feared that the defendant might be disguising or concealing a weapon.

Ductan and another officer who arrived later ordered the defendant to exit the vehicle and step to its rear. At the same time, Bissonnette, who was on the passenger's side of the vehicle, opened the front passenger door of the vehicle and

---

[2] The motion judge found as a fact that the defendant moved in a herky jerky manner and appeared nervous. Bissonnette was on the passenger's side of the vehicle and may have been able to see only shadows through the tinted window. The defendant does not challenge these findings of fact or argue that Bissonnette could not have seen these things.

looked at the front passenger seat floor area. Without manipulating the seat or touching anything in the vehicle, Bissonnette saw in plain view the barrel of a firearm sticking out from underneath the passenger seat. He then alerted other officers, and the defendant was handcuffed. Maracallo then pat frisked the defendant and located narcotics on his person.

The defendant moved to suppress all the items seized from his person and vehicle, including the firearm and the narcotics. After the evidentiary hearing, the motion judge denied the motion. The defendant filed a motion for reconsideration, which was also denied. Following his conviction, he now appeals, arguing only that his motion to suppress was erroneously denied. The defendant challenges only the exit order and the search of the vehicle. He makes no argument about the lawfulness of the stop itself or about the patfrisk of his person. We therefore need not address those two issues.

Discussion. 1. Exit order. The defendant first argues that it was unreasonable for the officers to issue the exit order during this routine vehicle stop.

"[A]n exit order is justified during a traffic stop if officers have a reasonable suspicion of a threat to safety" based on specific and articulable facts. Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020). See Commonwealth v. Monell, 99 Mass. App. Ct. 487, 489 (2021). "It is not necessary

to show that an individual police officer personally experienced fear . . . ." Commonwealth v. Daniel, 464 Mass. 746, 753 n.2 (2013).

Movements of the vehicle's occupants that are "suggestive of the occupant's retrieving or concealing" a weapon may objectively raise legitimate safety concerns. Commonwealth v. Stampley, 437 Mass. 323, 327 (2002). Here, Bissonnette saw the defendant lean toward the floor area of the front passenger seat after the vehicle was stopped. Taken together, all the facts and circumstances, including this movement, the defendant's failure to comply with the officers' order to keep the window down, and the defendant's nervous behavior after he was stopped, sufficed to provide an articulable basis for reasonable suspicion that the defendant had hidden or retrieved a weapon, and thus of a threat to officer safety. See Commonwealth v. Goewey, 452 Mass. 399, 407 (2008) (listing defendant's questionable identification, nervousness, and reaching movements as factors supporting officer's fear for his safety). Contrast Commonwealth v. Barreto, 483 Mass. 716, 722-723 (2019) (exit order improper when based solely on defendant's nervousness where defendant responded to officers' questions, complied with officers' requests, and "made no movements consistent with reaching for a weapon after he was stopped"). We therefore conclude that the exit order was lawful.

2.  Vehicle search.  Next, the defendant challenges Bissonnette's search of the vehicle, which was undertaken by the officer's opening of its door and examination of the car's previously hidden interior.  Police are permitted to conduct a warrantless limited Terry-type[3] protective search of a car for weapons without probable cause when there is a reasonable, articulable suspicion that the suspect might gain control of a weapon from within the car and use it against them.  See Daniel, 464 Mass. at 752 ("limited search for weapons"); Commonwealth v. Almeida, 373 Mass. 266, 270-271 (1977); Commonwealth v. Silva, 366 Mass. 402, 406 (1974).  See also Commonwealth v. Douglas, 472 Mass. 439, 445 (2015) (calling it "protective sweep" of car).  Police may conduct such a protective search of a vehicle even after the occupants have exited the vehicle in circumstances in which occupants "may access a weapon left behind upon returning to the vehicle" and use it against the police then.  Commonwealth v. Silvelo, 486 Mass. 13, 16 (2020).  The intrusiveness of the protective search must be "proportional to the degree of suspicion that prompted it" (citation omitted), Daniel, supra, and the scope of the search must be "confined to the area from which the suspect might gain possession of a weapon" (citation omitted), Douglas, supra at 446.

---

[3] See Terry v. Ohio, 392 U.S. 1 (1968).

The officers here had an articulable basis for reasonable suspicion that the defendant had secreted a firearm in the car, in the floor area of the front passenger seat, that it might be used against them, and that the defendant might use it against them upon his return to the vehicle. The limited search of the defendant's vehicle was proportional to that suspicion. Bissonnette merely opened the front passenger door and looked at the floor area of the front passenger seat, the exact area toward which the defendant had leaned. This area would have been within the immediate reach of the defendant upon returning to the vehicle. The limited protective search of the defendant's vehicle, which revealed a firearm in plain view, was thus constitutionally permissible.

Since both the exit order and the protective search were permissible, the motion to suppress was properly denied.

<u>Judgments affirmed</u>.